**HOLLSTEIN KEATING CATTELL JOHNSON & GOLDSTEIN P.C.**
**BY:  Richard W. Hollstein (RH 8533) /Aaron G. Moody (AM 7620)**
Willow Ridge Executive Office Park
750 Route 73 South – Suite 301
Marlton, NJ 08053
(856) 810-8860
ATTORNEYS FOR Sunspecs, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARY LOUISE MASTERSON and<br>RICHARD MASTERSON, her husband, | : | |
| | : | |
| v. | : | |
| | : | 1-03-CV-03202-RMB-AMD |
| | : | |
| | : | |
| B. J. STORES, INC., T/A HOYS 5&10,<br>SUNSPECS, INC., JOHN DOE, MARY<br>DOE, ABC PARTNERSHIPS AND XYZ<br>CORPORATIONS, | : | |

_____

### DEFENDANT SUNSPECS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT, WILLIAM KITZES, J.D. AND RENEWING ITS MOTION FOR SUMMARY JUDGMENT
### Motion Date: March 3, 2007
_____

Richard W. Hollstein
Aaron G. Moody
Attorneys for Defendant
Sunspecs, Inc.

Hollstein Keating Cattell Johnson & Goldstein P.C.
Willow Ridge Executive Office Park
750 Route 73 South- Suite 301
Marlton, NJ 08053

i

## TABLE OF CONTENTS

I.      INTRODUCTION/PRELIMINARY STATEMENT…………………………1

II.     STATEMENT OF FACTS……………………………………………… 2

        A. Procedural History………………………………………………………2

        B. Mr. Kitzes' Opinions…………………………………………………………2

        C. Mr. Kitzes' Qualifications…………………………………………………5

III.    ARGUMENT……………………………………………………………….7

        A. Mr. Kitzes' Testimony Should Be Barred Under Daubert and Fed.R.
           Evid. 702……………………………………………………………………8

           1. Mr. Kitzes is Not Qualified to Testify As to the Adequacy of
              Warnings on a Body Board or Causation………………………….....10

           2. Mr. Kitzes' Testimony Should be Excluded in Its Entirety
              Because it is Not Reliable…………………………………………....13

              a. The Opinion Regarding Adequacy of Warnings is Not Reliable……16

              b. Kitzes' Testimony On Causation is Unreliable……………….....20

           3. Mr. Kitzes' Opinions Must Be Excluded Because They Are Not
              Helpful to the Trier of Fact and Therefore do Not "Fit" the Facts
              Of the Case……………………………………………………………..21

        B. Any Testimony By Mr. Kitzes that the Board Should Have Contained a
           Warning that Body Boarding Is Hazardous Must Be Barred………………..23

        C. Mr. Kitzes' Testimony Regarding the Federal Hazardous Substances
           Act Must Be Barred…………………………………………………….....24

        D. Mr. Kitzes' Testimony Regarding the Way in Which a Company Should
           Create Warnings Should be Barred as Irrelevant…………………………27

        E. Mr. Kitzes' Testimony Regarding the Benefit to Riding on the Board With
           One's Head Behind the Nose, To the Extent he Seeks to Relay Information
           He Allegedly Obtained from Other Manufacturers As to the Purpose of
           Instructions, and, In Particular, the Instruction To "Ride With Your Head
           Behind the Nose of the Board" Should be Excluded as Hearsay and
           Because It is Not Reasonably Relied Upon by Experts in the Field………...28

1. Other Manufacturers Materials and/or Communications with Those Manufacturers is Not Evidence Reasonably Relied Upon By Experts In the "Product Safety" Field to Reach the Conclusion that Riding With One's Head In Front of the Nose of the Board is Dangerous…………….........................................................................29

2. Any Conversations, Communications, or Materials of Other Manufacturers Should Be Excluded Under Rule 703 Because the Probative Value of that Evidence Does Not Outweigh its Prejudicial Effect………………………………………………………31

F. Sunspecs' Motion for Summary Judgment Should be Granted…………………32

IV. CONCLUSION……………………………………………………………………….33

## TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Aloe Coal Company v. Clark Equipment Co.</u>, 816 F.2d 110 (3d Cir. 1989)……..………..10

<u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242 (1986)……………………….…..……..33

<u>Bah v. Nordson Corp.</u>, 2005 U.S. Dist. LEXIS 15683 (S.D.N.Y. Aug 1, 2005)...…...………11

<u>Becker v. Baron Bros.</u>, 138 N.J. 145 (1994)……………………………….………………28

<u>Bourelle v. Crown Equipment Corporation</u>, 220 F.3d 532 (7th Cir. 2000)…..………...9, 14, 20

<u>Calhoun v. Yamaha Motor Corp.</u>, 350 F.3d 316 (3d Cir. 2003)…........................................20, 21

<u>Campos v. Firestone Tire and Rubber Co.</u>, 98 N.J. 198 (1984)………………………………23

<u>Casper v. SMG</u>, 389 F.Supp. 2d 618 (D.N.J. 2005)……………….…………………..24

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)…………………………………………….33

<u>Daubert v. Merrell Dow Pharmaceuticals., Inc.</u>, 509 U.S. 579 (1993)……………….…*passim*

<u>Elcock v. Kmart</u>, 233 F.3d 734 (3d Cir. 2000)…………………………………………9, 13

<u>Heinle v. Duff Norton Company</u>, No. Civ-95-3598, (D.N.J. 1999)………………..…15, 22, 23

<u>In re: "Agent Orange" Prod. Liab. Litig.</u>, 611 F.Supp. 1223 (E.D.N.Y. 1985)…………..…...…29

<u>In re Initial Public Offering Sec. Lit.</u>, 174 F.Supp. 2d 61 S.D.N.Y. 2001)…………..………..24

<u>In re Paoli Railroad Yard PCB Litigation,</u> 35 F.3d 717 (3d Cir., 1994) (Paoli II) ……….9, 13, 29

<u>Jaurequi v. Carter Manufacturing Co., Inc.</u> 173 F.3d 1076 (8th Cir. 1999)….10, 14, 15, 18, 19, 20

<u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999)…………………………………………9

<u>Mathews v. University Loft Co.</u>, 387, N.J. Super 348, 903 A.2d 1120 (App. Div. August 15, 2006)……………………………………………………………………23

<u>Meyerhoff v. Michelin Tire Corp.</u>, 852 F.Supp. 933 (D.Kan. 1994), aff'd 70 F.3d 1175 (10th Cir. 1995)……………………………………………………………….…15

<u>Michalko v. Cooke Color & Chem Corp.</u>, 91 N.J. 386 (1982)………..………………...…23, 28

Milanowicz v. The Raymond Corporation, 148 F.Supp. 2d 525 (D.N.J. 2001)……….9, 10, 14,
………………………………………………………………………………………………...…15. 20

McWilliams v. Yamaha Motor Corporation, 780, F.Supp. 251 (D.J.J. 1991), rev'd on
other grounds, 987 F.2d 200, 204 (3d Cir. 1992)…………..………………………………23

Oddi v. Ford Motors Company, 234 F.3d 136 (3d Cir. 2000), cert. denied, 121 S.Ct.
1357 (2001)………………………………………………….……………………………………9, 13

Peitzmeier v. Hennesey Industries, 97 F.3d 293 (8th Cir. 1996)……………………………14

Surace v. Caterpilar, Inc., 111 F.3d 1039.(3d Cir. 1997)…………………………………....10

Tirrell v. Navistar, Inern., Inc., 248 N.J. Super 390 (App. Div. 1991)…………………………28

U.S. v. Leo, 941 F.2d 181 (3d Cir. 1991)…………….…………………………………………24

Williams v. Southern Waterheater USA. Inc., NO. 3:95-cv-436, (E.D. Va., Jan. 16, 1996). 21, 22

**Rules**

Fed.R.Civ.P. 56(c)…………………………………………………………………………….32

Fed.R.Evid. 403………………………………………………………………………………27

Fed.R.Evid. 702……………………………………………………………………………...7

Fed.R.Evid. 703………………………………………………………………………5, 28, 29,31, 32

**Regulations**

16 CFR 1500.3(b)(4)(i)(D)………………………………………………………………26

16 CFR 500.3(b)(14)…………………………………………………………..………26

16 CFR 500.3(b)(17)………………………………………………………….………26

16 CFR 1500.18……………………………………………………………………..22, 25, 26

**Statutes**

15 U.S.C. § 1261(f)(1)(D)……………………………………………………………25, 26

15 U.S.C. § 1261(f)………………………………………………………………………26

15 U.S.C. § 1262(e)……………………………………………………..………………25

15 U.S.C. § 1263(a)……………………………………………………..………………26

N.J.S.A. 2A:58C-2 <u>et seq</u>……………………………………………………27, 28

N.J.S.A. 2A:58C-1b(3)……………………………………………………………..28

## I.    INTRODUCTION/PRELIMINARY STATEMENT

This case involves a neck injury allegedly suffered by the plaintiff, Mary Louise Masterson, 67 years of age, as a result of a fall she suffered while body-boarding (also referred to as "boogie-boarding") in Cape May, New Jersey.  Plaintiff is proceeding on a warnings theory only under the New Jersey Products Liability Act.  Plaintiff's sole liability expert is William Kitzes, J.D.  For the reasons set forth below, Mr. Kitzes' testimony should be barred in its entirety.  Without Mr. Kitzes' testimony, there is no genuine issue of material fact as to whether the body board contained inadequate warnings; accordingly, defendant renews its motion for summary judgment, which should be granted.

## II.    STATEMENT OF FACTS

This case arises out of an accident that occurred on June 24, 2002 while plaintiff Mary Louise Masterson was body-boarding in Cape May, New Jersey.  Plaintiffs allege that defendant Sunspecs, Inc. is the statutory manufacturer and/or seller of the body-board in question allegedly as a result of its alleged involvement in importing the subject board from China.  Plaintiff Mary Louise Masterson describes her accident as follows:

> So I plopped myself down on the boogey [sic] board and I was going along and I went just a short distance and all of the sudden like the board took control of me and I went over my head and it somersaulted me into the sand and I hit my head…

See Deposition Testimony of Mary Louise Masterson (day 1), attached hereto as Exhibit M, page 113, line 23- page 114, line 2; page 116, lines 8-12.  Ms. Masterson testified that she was separated from the board as she fell and that the board went behind her while she fell.  See Deposition Testimony, Exhibit M, page 55, lines 18-23. [1]  In an attempt to prove that the subject

---

[1] A detailed recitation of the facts, many of which are not necessary to decide the current motion, is contained in Sunspecs and BJ's Stores, Inc.'s Statement of Uncontested Facts in Support of Their Joint Motion for Summary Judgment. See Doc. #54.

board was not reasonably fit, suitable, or safe because it lacked adequate warnings and that such lack of warning caused Ms. Masterson's injuries, plaintiffs have chosen William Kitzes, J.D. as their only liability expert.

### A.     Procedural History

Plaintiff initially filed this action against Sunspecs of Ocean City, Inc. and BJ's Stores, Inc., the alleged retailer of the board in question.  By agreement of all counsel, "Sunspecs, Inc" (who plaintiff alleges imported the board from China and is the statutory manufacturer and/or seller of the board) was substituted in place of "Sunspecs of Ocean City, Inc.".  Thus, Sunspecs of Ocean City, Inc. (an entity that came into existence after the sale of the board allegedly involved in this incident) is no longer a party to the case.  Plaintiff also sued the alleged manufacturer(s) of the Board, Madame Wu Ai Ying and Ziejiang International Trade and Exhibition Corporation.  The claims against Ms Wu and Ziejiang were dismissed for lack of personal jurisdiction.  See Opinion and Order to Dismiss, Doc#42, 43.

On March 7, 2006, Defendants Sunspecs, Inc. and BJ Stores, Inc. moved for summary judgment.  See Motion for Summary Judgment, Doc. # 53.  BJ Stores, Inc. also moved for summary judgment on separate grounds.  See Motion for Summary Judgment, Doc. #47.  On November 13, 2006, the Court granted BJ's motion but denied Sunspecs, Inc.'s.  See Order, Doc.#63.

### B.     Mr. Kitzes' Opinions

Mr. Kitzes limits his opinions in this case to the issue of warnings as a defect. Essentially, Mr. Kitzes offers the following opinions:

1.      Sunspecs, Inc. failed to follow Mr. Kitzes' "principles of product safety analysis", when deciding whether warnings should have been placed on the board,

2.      Sunspecs failed to adequately warn bodyboard users of the potential for

catastrophic injury caused by failing to keep the nose of the board out in front of the rider's head,

and

3.      The subject body-board "meets the definition" of a Misbranded Hazardous

Substance under the Federal Hazardous Substances Act.

See Kitzes Report, Exhibit A, page 6.

Although it is not mentioned in his conclusions, Mr. Kitzes also offers the opinion that:

An adequate warning informing users to keep their head behind the nose of the
board to avoid catastrophic injury affixed to the product would have substantially
reduced or eliminated the injury to a 68-year old grandmother.

See Kitzes Report, Exhibit A, page 8.

Finally, although Mr. Kitzes does not directly address it in his report, it is anticipated that

Mr. Kitzes may offer an opinion that the board should have contained a warning regarding the

hazards of body boarding in the ocean.

Ostensibly in an effort to reach these conclusions, in his report, Mr. Kitzes cites to

principles of what he calls "product safety management" and apparently intends it to be his

methodology.  See Kitzes Report, Exhibit A, pages 1-3.  He then lists 6 "product safety

principles" that he contends manufacturers should apply "to ensure that products are reasonably

safe."  See Kitzes Report, Exhibit A, pages 2-3.  He also cites to several texts (see Exhibit A,

pages 4-6), but he only vaguely explains what the texts say.  Indeed, the only link between these

principles and any of these texts is his vague statement on page 5 that "the seminal principles

that create the model for product safety management have been well established and widely

accepted in business, government, and academic institutions for over 50 years."  See Kitzes

Report, Exhibit A, page 5.  None of these cited sources specifically provide a methodology to

determine if a product needs a warning.

Mr. Kitzes' basis for concluding that a board without a warning or instruction to "ride with your head behind the nose of the board" is dangerous is based on (1) other manufacturers including similar warnings in their materials, (2) a 1990 study by a lifeguard in Huntington Beach, California, indicating that there were many reports of cervical injury while bodysurfing and bodyboarding in Southern California.  <u>See</u> Exhibit C, Kitzes Testimony, page 141, lines 6-21 and page 142, line 11- page 143, line 9; Exhibit A, Kitzes Report, page 6.  A copy of the article is attached hereto as Exhibit D.  That article does not deal with the issue of whether it is dangerous to ride with one's head behind the nose of a body-board, it merely documents injuries to body boarders and bodysurfers.

Mr. Kitzes cites to a total of four (4) body boards by three different manufacturers in support of his contention that a warning regarding riding with one's head behind the nose of the board is required.  In his report, Mr. Kitzes only cited to two other body boards with approval, a Wham-O board sold in 2001 which came with a warning regarding riding with one's head behind the nose, (See, Kitzes Report, Exhibit A page 7, Picture of Wham-O board, attached hereto as Exhibit E) and a Swimways board embossed with a similar warning.  <u>See</u> Kitzes Report, Exhibit A, page 7; Picture of Embossed Warning, attached hereto as Exhibit F.  In his report, he also cited to the Sunspecs of Ocean City, Inc. "poster" from 2004 which is placed loosely in the shrink wrap around the board.  <u>See</u> Kitzes Report, Exhibit A, page 8; Sunspecs Warning Label, attached hereto as Exhibit G. Neither the Wham-O or subsequent Sunspecs warnings were actually placed *on* the board itself; they simply came on a piece of paper within the board's packaging.

In his deposition, Mr. Kitzes identified an additional board, which was also manufactured by Swimways, with a similar warning sewn into the board (<u>See</u> Kitzes Testimony, Exhibit C,

page 65-71, page 77, lines 3-5).  Mr. Kitzes could not say whether any of the boards actually had

those warnings in 2000 (the year the subject board was sold).  See Kitzes Testimony, Exhibit C,

page 144, lines 16-21 (the second Swimways Board), page 150, lines 8-12 (the first Swimways

Board referenced in the report); page 150, lines 13-19)[2].   He performed no testing or studies on

those boards, and specifically no testing on the efficacy or durability of any of the warnings, and

none of the material he relied upon contains any such testing or studies.

Mr. Kitzes himself "has not come to the exact, specific language" of a warning that

should be on body boards.  See Kitzes Testimony, Exhibit C, page 68, lines 6-13.  He also did

not perform any tests on any of the warnings that he cites to in his report.  See Kitzes Testimony,

Exhibit C, page 73, line 16- page 74, line 22.  He also did not determine if the embossed

Swimways Board would be readable after use in the ocean (indeed, he testified that he was not a

big fan of embossing warnings because there is no contrast), (See Kitzes Testimony, Exhibit C,

page 127, line 1- page 128, line 4).  He also did he test whether the sewn-on warning on the other

Swimways Board would last in a beach environment.  See Kitzes Testimony, Exhibit C, page 82,

lines 6-19.  Finally, he has not submitted the opinions contained in his January 20, 2006 report to

any outside organization for review or analysis.  See Deposition Testimony, Exhibit C, page 144,

lines 2-8.  Again, he did not perform any testing or studies on any warnings.

### C.    Mr. Kitzes' Qualifications

Mr. Kitzes has a law degree and is a former attorney for the Consumer Products Safety

Commission ("CPSC").  Kitzes CV, Exhibit B.  He is not a medical doctor, an engineer, or a

biomechanical engineer.  See id.

---

[2] As for the Wham-O board, Mr. Kitzes indicated that the copyright from the warning page was 2001.  At deposition, David Hoy of BJ Stores speculated that if they went to the trouble of putting a warning on the board in 2001 they would have done so in 2000 as well.  See Exhibit C, Kitzes Testimony, page 150, line 18- page 151, line 22.  Clearly, this is pure speculation.  Moreover, it certainly is not the type of evidence reasonably relied upon by experts in Mr. Kitzes' field.  See Fed.R.Evid. 703.

Mr. Kitzes is an attorney who, after leaving the CPSC, decided to make a living giving opinions in litigation.  Mr. Kitzes graduated from the University of Wisconsin with a Bachelor of Arts degree.  See Kitzes CV, attached hereto as Exhibit B; Deposition Testimony of William Kitzes, attached hereto as Exhibit C, page 90, lines 3-8.  He graduated with a History major and a Political Science minor.  See Deposition Testimony, Exhibit C, page 90, lines 9-11.  He holds no other degrees other than this undergraduate degree and the law degree from Washington College School of Law.  See Deposition Testimony, Exhibit C, page 90, lines 12-17.  He took biology, chemistry, meteorology and thermo-dynamics at the undergraduate level.  See Deposition Testimony, Exhibit C, page 90, line 18- page 91, line 3.  His biology class was a combination of biology and anthropology.  See Deposition Testimony, Exhibit B, page 91, lines 5-12.  He took no courses in medicine as part of his undergraduate degree.  See Deposition Testimony, Exhibit C, page 91, lines 13-15.  His only exposure to anatomy or physics was in conjunction with the above listed courses.  See Deposition Testimony, Exhibit C, page 91, lines 16-20.  There were no courses in safety or warnings as part of the undergraduate degree See Deposition Testimony, Exhibit C, page 91, lines 21-24.  At law school he took Torts and Advanced Seminar Torts and he received credit for the legal work he was doing at the Consumer Products Safety Commission. See Deposition Testimony, Exhibit C, page 92, lines 8-19.

He has no engineering degrees.  See Deposition Testimony, Exhibit C, page 93, lines 2-8. His only "engineering" course was a five day, 50 hour program in Human Factors at the University of Michigan College of Engineering.  See Deposition Testimony, Exhibit C, page 93, lines 9-16.  He was never enrolled in a degree program at the University of Michigan.  See Deposition Testimony, Exhibit C, page 93, lines 20-22.

He belongs to a number of organizations but he has never addressed warnings on body boards with any of them.  <u>See </u>Deposition Testimony, Exhibit C, page 101, line 24- page 102, line 11.  He never dealt with warnings on body boards during his time as an attorney at the CPSC.  <u>See </u>Deposition Testimony, Exhibit C, page 139, lines 5-13.  He has never worked for a company that has manufactured or designed body boards.  <u>See</u> Deposition Testimony, Exhibit C, page 139, lines 5-13.

Mr. Kitzes has no experience with body boarding**.**  <u>See</u> Deposition Testimony, Exhibit C, page 78- lines 4-6.  He has done no testing or studies personally to support his opinions.  The materials that he relied upon, which he produced in his deposition, contain no testing data or studies.  He admitted in his deposition that he did not reconstruct the accident.  Kitzes Testimony, Exhibit C, page 48, line 18- page 50, line 20.  He is not a reconstruction expert and that is not his area.  <u>See</u> Deposition Testimony, Exhibit C, page 144, lines 7-15.  The sole basis for his opinion is the fact that warnings appear on the boards of two other manufacturers and hearsay.  <u>See</u> Deposition Testimony, Exhibit C, page 141-142.  Mr. Kitzes does not consider himself an expert in biomechanics and he does not consider himself an expert in engineering. <u>See</u> Deposition Testimony, Exhibit C, page 143, lines 4-9.

### III.     ARGUMENT

First, for several reasons, Mr. Kitzes' testimony should be barred in its entirety under Fed.R.Evid. 702 and the principles espoused by <u>Daubert v. Merrell Dow Pharmaceuticals., Inc.</u>, 509 U.S. 579 (1993) and its progeny.  Indeed, Mr. Kitzes testimony has been the subject of many court opinions in which his testimony was either barred or limited.  A summary of some of those

cases is attached hereto as Exhibit H.  Second, any testimony by Mr. Kitzes that the Board should have contained a warning that body boarding is hazardous must be barred.  Third, Mr. Kitzes' testimony regarding the Federal Hazardous Substances Act should be excluded as irrelevant, unduly prejudicial, and as stating a legal opinion.  Fourth, Mr. Kitzes' testimony regarding the way in which a company should create warnings should be barred as irrelevant.  Finally, Mr. Kitzes' testimony, to the extent he seeks to relay information he allegedly obtained from other manufacturers as to the purposes of  instructions, and, in particular, the instruction to "ride with your head behind the nose of the board" should be excluded as hearsay and because it is not reasonably relied upon by experts in the field.  If Mr. Kitzes' testimony is barred, plaintiff will be unable to present a genuine issue of material fact as to the inadequacy of warnings on the board.  Thus, Sunspecs renews its motion for summary judgment, which should be granted.

### A.  Mr. Kitzes' Testimony Should Be Barred Under <u>Daubert</u> and Fed.R.Evid. 702

Mr. Kitzes' testimony should be barred under Fed.R.Evid. 702 and the principles espoused by <u>Daubert v. Merrell Dow Pharmaceuticals., Inc.</u>, 509 U.S. 579 (1993) and its progeny.  Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> Fed.R.Evid 702.

In <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), the Supreme Court held that district court judges must act as gatekeepers to insure that expert testimony is reliable, relevant, and helpful to the jury.  <u>Id</u>. at 597.  Although <u>Daubert</u> itself was limited to the

admissibility of scientific testimony, the Supreme Court has also held that the district court's gatekeeping responsibility applies to all expert testimony, whether or not "scientific" in nature. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). See Elcock v. Kmart, 233 F.3d 734, 744 (3d Cir. 2000). The proponent of the expert testimony at issue bears the burden of showing that the testimony satisfies the requirements of F.R.E. 702. Oddi v. Ford Motor Company, 234 F.3d 136 (3d Cir. 2000), cert. denied, 121 S. Ct. 1357 (2001).

In order for an expert's opinion to be reliable, the expert must have "good grounds" for his or her belief. The opinion, to be reliable, must be based on the "methods and procedures of science" and not merely on "subjective belief or unsupported speculation." In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994) (Paoli II), quoting Daubert, 509 U.S. at 589.

In assessing the reliability of an experts' methodology under Daubert, the trial court must consider various factors, including: (1) whether a method consists of a testable hypotheses; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Oddi, supra at 145; Elcock v. Kmart, 233 F.3d 734, 745-46 (3d Cir. 2000); In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742, n. 8 (3d Cir. 1994) ("Paoli II").

An expert in a products liability case offered to testify regarding inadequate warnings must meet the Daubert criteria. Milanowicz v. The Raymond Corporation, 148 F.Supp. 2d 525, 541 (D.N.J. 2001); Bourelle v. Crown Equipment Corporation, 220 F.3d 532, 538 (7th Cir.

2000).  In addition to the general reliability criteria of <u>Daubert</u>, in a warnings case, the expert must propose alternate warnings, and test the effectiveness of those warnings in order to be sufficiently reliable.[3]  <u>See</u> <u>id.</u>; <u>Milanowicz</u>, 148 F.Supp. 2d at 541; <u>Jaurequi v. Carter Manufacturing Co., Inc</u>. 173 F.3d 1076, 1084 (8th Cir. 1999).

        As shown below, the proffered expert testimony of Mr. Kitzes must be excluded under Fed.R.Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals., Inc.</u>, 509 U.S. 579 (1993) because (1) he is not qualified to give an opinion as to the adequacy of warnings on a body board, (2) his testimony is not reliable and is based on subjective belief and unsupported speculation, and (3) his opinions do not "fit" the case because they are not helpful to the trier of fact.


        *1.*        *Mr. Kitzes is Not Qualified to Testify As to the Adequacy of Warnings on a Body Board or Causation*

        The first step in the Rule 702 analysis requires that the expert be qualified.  <u>See</u> Fed.R.Evid. 702; <u>Calhoun v. Yamaha Motor Corp.</u>, 350 F.3d 316 (3d Cir. 2003).  Of course, the expert must be qualified to testify regarding the opinions he intends to give.  <u>Id</u>.  To be qualified, an expert witness must have such "skill , knowledge or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth."  <u>Aloe Coal Company v. Clark Equipment Co.</u>, 816 F.2d 110, 115 (3d Cir. 1989).  At a minimum, the expert must possess skill or knowledge greater than the average layman on the subject upon which he proposes to testify.  <u>see</u> <u>id.</u>  In order to determine if an expert is qualified to give an opinion in inadequate warnings, courts look to whether the expert has been trained or educated in human factors, psychology, or product safety engineering.  <u>Surace v. Caterpillar, Inc.</u>, 111 F.3d 1039,

---

[3] As discussed above, Mr. Kitzes did no such tests, nor are any such tests or studies contained in the materials he reviewed.

1055 (3d Cir. 1997).  In a warnings case, the expert must have knowledge and expertise concerning the product about which he or she will testify.  Bah v. Nordson Corp., 2005 U.S. Dist. LEXIS 15683 (S.D.N.Y. Aug 1, 2005).

Here, Mr. Kitzes is not qualified to give testimony on warnings at all, and certainly is not qualified to give testimony on warnings on body boards.  While Mr. Kitzes did take one, five day, 50 hour program in Human Factors at the University of Michigan College of Engineering[4], that is simply not enough to qualify him as a warnings expert, particularly a body board warnings expert.  Mr. Kitzes has no other engineering or human factors background. He has Bachelor of Arts degree from the University of Wisconsin, with a major in history and minor in Political Science.  See Deposition Testimony, Exhibit C, page 90, lines 9-11.  He holds no other degrees other than this undergraduate degree and the law degree from Washington College School of Law.  He took biology, chemistry, meteorology and thermo-dynamics at the undergraduate level. His biology class was a combination of biology and anthropology.  See Deposition Testimony, Exhibit C, page 90, line 18- page 91, line 12.  He took no courses in medicine as part of his undergraduate degree.  See Deposition Testimony, Exhibit C, page 91, lines 13-15.  His only exposure to anatomy or physics were in conjunction with the above listed courses.  See Deposition Testimony, Exhibit C, page 91, lines 16-20.  There were no courses in safety or warnings as part of the undergraduate degree.  He also has no engineering degrees.  See Deposition Testimony, Exhibit C, page 93, lines 2-8.

He also belongs to a number of organizations but he has never addressed warnings on body boards with any of them.  See Deposition Testimony, Exhibit C, page 101, line 24- page 102, line 11.  He has never worked for a company that has manufactured or designed body

---

[4] It should be noted that Mr. Kitzes was not enrolled in a degree program at Michigan, he simply took the "human factors" seminar there.

boards. While at the CPSC he worked as an attorney. As part of his activities as an attorney with the CPSC he never dealt with the issue of warnings on board boards. See Deposition Testimony, Exhibit C, page 139, lines 5-13. Finally, Mr. Kitzes has no experience with body boarding. See Deposition Testimony, Exhibit C, page 78- lines 4-6. Thus, Mr. Kitzes is simply not qualified to give opinions on the adequacy of warnings on a body board, as he simply has no expertise in designing warnings, and certainly has no experience in designing warnings for body boards.

In short, Mr. Kitzes may be an expert in the administrative procedures and workings of the CPSC. He may be an expert in giving legal advice to members of the CPSC in how they should conduct themselves. However, he is not being offered for either of those purposes; he is being offered to opine as to the adequacy of warnings. He has no other expertise. Essentially, Mr. Kitzes bootstraps himself into the courtroom. He has opinions but his opinions cannot assist the jury in their decision making because they have no educational foundation nor any foundation based upon experience or training.

It is even more clear that Mr. Kitzes is not qualified to give a biomechanical opinion on causation. In his report, Mr. Kitzes concludes as follows:

> An adequate warning informing users to keep their head behind the nose of the board to avoid catastrophic injury affixed to the product would have substantially reduced or eliminated the injury to a 68-year old grandmother.

See Kitzes Report, Exhibit A, page 8.

Mr. Kitzes is not a medical doctor, an engineer, or a biomechanical engineer. Indeed, he admitted in his deposition that he did not reconstruct the accident. See Deposition Testimony, Exhibit C, page 48, line 18- page 50, line 20. He even admitted that he was not qualified to do so. See Deposition Testimony, Exhibit C, page 144, lines 7-15. Thus, he is totally unqualified to opine as to the mechanics of the accident and whether Ms. Masterson's accident would have

been prevented had she ridden with her head behind the nose of the board.  Accordingly, Mr. Kitzes' opinion as to causation must be excluded.

Thus, in sum, Mr. Kitzes should not be permitted to testify either as to the adequacy of warnings or as to causation because he is simply not qualified to do so.  Accordingly, his testimony should be barred under Fed.R.Evid. 702.

### 2. Mr. Kitzes' Testimony Should Be Excluded in Its Entirety Because it is Not Reliable.

The second step in the Daubert/Rule 702 analysis is whether the expert's opinion is reliable.  In order for an expert's opinion to be reliable, the expert must have "good grounds" for his or her belief.  The opinion, to be reliable, must be based on the "methods and procedures of science" and not merely on "subjective belief or unsupported speculation."  In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994) (Paoli II), 35 F.3d 717, 742 (3d Cir. 1994) ("Paoli II"), quoting Daubert 509 U.S. at 589.

In assessing the reliability of an experts' methodology under Daubert, the trial court must consider various factors, including: (1)  whether a method consists of a testable hypotheses; (2) whether the method has been subjected to peer review; (3)  the known or potential rate of error; (4)  the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6)  the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Oddi, supra at 145; Elcock v. Kmart, 233 F.3d 734, 745-46 (3d Cir. 2000); In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742, n.8 (3d Cir. 1994) ("Paoli II").

As noted above, there are several additional "indicia of reliability" that have particular relevance in a products liability case, including: (1) federal design and performance standards;

(2) standards established by independent organizations; (3) relevant literature, (4) evidence of industry practice, (5) product design and accident history, (6) whether the expert uses illustrative charts and diagrams, (7) data from scientific testing, (8) the feasibility of the suggested modification, and (9) the risk-utility of the suggested modification.  Milanowicz v. The Raymond Corporation, 148 F. Supp. 2d 525, 526 (D.N.J. 2001).  The court noted the "centrality" of the "scientific testing" factor to the Daubert analysis:

> Both Daubert and Kumho properly emphasize the centrality of scientific testing and the court's scrutiny of the soundness of that testing….the absence of testing is a consistent factor in court decisions excluding expert testimony.

> Id. at 535, citing Bourelle v. Crown Equipment Corporation, 220 F.3d 532, 538 (7th Cir.

2000);  Jaurequi v. Carter Manufacturing Co., Inc. 173 F.3d 1076, 1084 (8th Cir. 1999), and Peitzmeier v. Hennesey Industries, 97 F.3d 293 (8th Cir. 1996).  As for the "industry practice" prong, the court noted that although reliance on other manufacturers designs was permissible:

> If the expert seeks to base his conclusions on the existence of products incorporating his proposed alternative, he must corroborate his assertions by identifying those products, their manufacturers, and the extent of their use, and discussing the allegedly defective design in this context.

> Milanowicz, 148 F.Supp. at 533-4.[5]

An expert in a products liability case offered to testify regarding inadequate warnings must meet the Daubert criteria.  Milanowicz, 148 F.Supp. 2d at 541; Bourelle v. Crown Equipment Corporation, 220 F.3d 532, 538 (7th Cir. 2000).  In addition to the general reliability criteria of Daubert, in a warnings case, the expert must propose alternate warnings and test the effectiveness of those warnings in order to be sufficiently reliable.  See id.; Milanowicz, 148 F.Supp. 2d at 541; Jaurequi v. Carter Manufacturing Co., Inc. 173 F.3d 1076, 1084 (8th Cir.

---

[5] Here, Mr. Kitzes did not identify the extent of any of the manufacturers use of these boards or the context in which it was used.  Indeed, as noted below, he did not even know if boards he uses had warnings at the time the subject board was sold in 2000.

1999); Meyerhoff v. Michelin Tire Corp., 852 F.Supp. 933, 947 (D.Kan. 1994), aff'd 70 F3d

1175 (10th Cir. 1995); Heinle v. Duff Norton Company, No. Civ-95-3598, (D.N.J. 1999),

(warnings expert must adopt specific language for proposed warning and conduct tests to

determine the "feasibility, adequacy, and effectiveness" of the proposed warning).[6]  Of course, in

order to be admissible the expert must actually employ a methodology of some kind.

Milanowicz, 148 F.Supp. 2d at 535.

        In Milanowicz, plaintiff alleged that he was injured while adjusting the forks on a lift

truck manufactured by defendant.  Milanowicz, 148 F.Supp. 2d at 526.  Plaintiff's expert offered

an opinion that the fork mounting and adjusting mechanism was defectively designed and that

the lift truck did not contain adequate warnings and instructions regarding safe fork adjustment.

Id. at 527.  The court went through an extensive Daubert analysis of the expert and his opinions

and excluded both opinions.  On the failure to warn issue, the court first noted that although the

expert cited "a few design manuals and references" he did not discuss what those sources said or

how they informed his analysis.  Id.  Importantly, the court also noted that the expert had not

written a proposed alternative warning or set of instructions which would have met his standards,

*nor had he tested the effectiveness of any proposed instructions or warnings*.  Id.  at 541.

(emphasis added).  The court therefore excluded the opinion on warnings.  Id. at 541-42.

        Similarly, in Jaurequi, the plaintiffs' experts offered opinions on the inadequacy of

warnings on a John Deere "corn head".  Jaurequi, 173 F.3d at 1084.  However, neither expert had

created or designed an appropriate warning, "much less tested its effectiveness".  Id.  Moreover,

neither expert had pointed to other manufacturers of farm machinery using warnings *at the time*

*the subject corn head was manufactured*.  Id. (emphasis added).

---

[6] A copy of the Opinion in Heinle is attached hereto as Exhibit I.

Here, Mr. Kitzes offers two opinions that are necessary to any recovery by plaintiff in this case: (1) that Sunspecs "failed to adequately warn" bodyboard users about the potential for catastrophic injury caused by failing to keep the nose of the board out in front of the rider's head", (see Exhibit A, page 6), and (2) that the warning would have "Substantially reduced or eliminated the injury" to Ms. Masterson.  See Kitzes Report, Exhibit A, page 8.  Neither of these opinions are reliable under Daubert.

<em>a.    The Opinion Regarding Adequacy of Warnings is Not Reliable</em>

In his report, Mr. Kitzes cites to principles of what he calls "product safety management" and apparently intends it to be his methodology.  See Kitzes Report, Exhibit A, pages 1-3.  He then lists 6 "product safety principles" that he contends manufacturers should apply "to ensure that products are reasonably safe."  Id. at 2-3.  He also cites to several texts (see report, pages 4-6), but he only vaguely explains what the texts say, and, more importantly, never explains how those texts support the "safety principles" he has identified.  Indeed, the only link between these principles and any of these texts is his vague statement on page 5 that "the seminal principles that create the model for product safety management have been well established and widely accepted in business, government, and academic institutions for over 50 years."  Id.

Initially, it is clear that these "principles" are not a methodology at all, and they certainly do not provide any methodology to reach the conclusion that the board inadequately warned users.  Indeed, all of those principles beg that exact question.  That is, they purport to require a manufacturer to establish a written safety policy, adequately identify hazards, perform "design review", develop adequate warnings, continuously monitor safety data, and take corrective action to remove defective products from the hands of consumers.  However, none of those "principles" provide any methodology whatsoever, much less a reliable one, to determine <em>if</em> a particular

product's warnings are inadequate.  In other words, applying these principles might require a company to take certain action, but they do not in any way provide a vehicle to determine what a particular product's hazards are and whether they are defective.  Thus, Mr. Kitzes simply has employed no methodology to come up with his conclusions that the board did not contain an adequate warning.

Indeed, it has become clear that Mr. Kitzes' sole basis for concluding that a board without a warning or instruction to "ride with your head behind the nose of the board" is dangerous is based on (1) two other manufacturers including similar warnings in their materials, (2) a 1990 study by a lifeguard in Huntington Beach, California, indicating that there were many reports of cervical injury while bodysurfing and bodyboarding in Southern California.  See Kitzes Testimony, Exhibit C, page 141, lines 6-21 and page 142, line 11- page 143, line 9; Kitzes Report, Exhibit A, page 6.  Again, this is not a methodology at all.  As for the article, it simply documents the frequency of cervical injuries by bodysurfers and bodyboarders at particular beaches without documenting the surf conditions.  It does not discuss the users position on the board in relation to the injuries.  See Article in BodyBoarding Magazine, Exhibit D.  More importantly, Mr. Kitzes' reliance on other manufacturers is simply not reliable.  There is no science to what he did; he simply looked at other manufacturers' warnings and decided that since that warning was on other boards, should be used.  That is not an appropriate methodology.  Mr. Kitzes must provide *some* science to back up his claim that riding with one's head in front of the nose of the board is dangerous and therefore a board should warn against that practice.

Kitzes' testimony is unreliable for several other reasons.  First, he proposes no alternative warning which he believes should have been on the board.  Although he does cite to other manufacturers' warnings with approval, he specifically states that he "has not come to the exact,

specific language" of a warning that should be on body boards.  See Kitzes Testimony, Exhibit C, page 68, lines 6-13.  This certainly explains why he did not test the warning.  The fact that Mr. Kitzes has not designed the "exact language" which he believes should be on the board alone renders Mr. Kitzes' testimony unreliable.  Jaurequi, 173 F.3d at 1084.

Second, Mr. Kitzes' citations to other manufacturers' warnings do not make his testimony reliable.  In his report, Mr. Kitzes only cited to two other body boards with approval, a Wham-O board sold in 2001 which came with a warning regarding riding with one's head behind the nose, (See Kitzes Report, Exhibit A, page 7, Exhibit E), and a Swimways board embossed with a similar warning.  See Kitzes Report, Exhibit A, page 7; Exhibit F.  In his report, he also cited to the Sunspecs of Ocean City, Inc. "poster" from 2004 which is placed loosely in the shrink wrap around the board.  See Kitzes Report, Exhibit A, page 8; Exhibit G.  Notably, neither the Wham-O or subsequent Sunspecs warnings were actually placed on the board itself; they simply came on a piece of paper within the board's packaging and do not remain with the body board after it is first used.[7]

In his deposition, Mr. Kitzes identified an additional board, which was also manufactured by Swimways, with a similar warning sewn into the board.  See Kitzes Testimony, Exhibit C, page 65-71, page 77, lines 3-5.  Importantly, Mr. Kitzes could not say whether the boards actually had those warnings in 2000 (the year the subject board was sold).  See Kitzes Testimony, Exhibit C, page 144, lines 16-21 (the second Swimways Board), page 150, lines 8-12 (the first Swimways Board referenced in the report); page 150, lines 13-19 (the Wham-O Board)[8]

---

[7] In this case, the body board at issue was purchased and in use since 2000, two years before the subject accident.  See Deposition Testimony of Richard Masterson (plaintiff's son), attached hereto as Exhibit J, page 18, line 8, - page 19, line 14.

[8] As for the Wham-O board, Mr. Kitzes indicated that the copyright from the warning page was 2001.  At deposition, David Hoy of BJ Stores speculated that if they went to the trouble of putting a warning on the board in 2001 they would have done so in 2000 as well.  See Kitzes Testimony, Exhibit C, page 150, line 18- page 151, line

As Jaurequi makes clear, the alternate designs relied upon must be in use at the time the subject product was manufactured.  Jaurequi, 173 F.3d at 1084.  The product at issue in this case was sold in 2000.  See Deposition Testimony of Richard Masterson (plaintiff's son), attached hereto as Exhibit J, page 18, line 8, - page 19, line 14.  Kitzes has not pointed to one board which had a warning regarding riding one's head behind the nose in 2000.  Thus, his citation to other manufacturers warnings does not render his opinion reliable.

Third, Mr. Kitzes obviously did not test any proposed warning, as he has not even proposed the exact language of the warning he contends should be on the board.  Moreover, he did not perform any tests on any of the warnings that he cites to in his report.  See Kitzes Testimony, Exhibit C, page 73, line 16- page 74, line 22.  He also did not determine if the embossed Swimways Board would be readable after use in the ocean (indeed, he testified that he was not a big fan of embossing warnings because there is no contrast), (Kitzes Testimony, Exhibit C, page 127, line 1- page 128, line 4), nor did he test whether the sewn-on warning on the other Swimways Board would last for any length of time while used at the beach.  See Kitzes Testimony, Exhibit C, page 82, lines 6-19.  In any event, he lacks the expertise to give such testimony.

Mr. Kitzes' failure to come up with the exact warning he proposes and the corresponding failure to test the warning is the core of the unreliability of his testimony.  Simply put, he must come up with a proposed warning, the proposed material of that warning, whether it should be embossed on the board, sewn on, the lettering, coloring, etc. and TEST whether that warning would be effective and sufficiently durable.  Otherwise, his opinion is simply not reliable.  See Bourelle, 220 F.3d at 532; Milanowicz, 148 F.Supp. 2d at 541; Jaurequi, 173 F.3d at 1084.

_____

22.  Clearly, this is pure unsupported speculation.  Moreover, it certainly is not the type of evidence reasonably relied upon by experts in Mr. Kitzes' field.  See Fed.R.Evid. 703.

In sum, Mr. Kitzes has not demonstrated any methodology to come to his conclusion that the board did not contain an adequate warning.  He has not linked any "product safety analysis" methodology to the warning that should have been on the board in this case.  He has not proposed the exact nature of the warning he thinks should be on a board, and certainly has not tested it.  He also cannot point to any manufacturers who put similar warnings on boards at the time the board at issue was manufactured and sold.  What he essentially did was this: he reviewed some materials about other board manufacturers and an article about head and neck injuries, which were provided by plaintiff's counsel[9], and, just by reviewing those materials, came to the conclusion that the board needs a warning (without saying exactly what warning it should have).  That is not a methodology.  Under <u>Daubert</u>, his testimony regarding the adequacy of Sunspecs' warning must be excluded.

b.    <em>Kitzes' Testimony On Causation Is Unreliable</em>

Kitzes' opinion that that the warning would have "substantially reduced or eliminated the injury" to Ms. Masterson is based on absolutely no methodology and is completely unreliable (he is also unqualified to give that opinion- <u>See</u> Part III.A, <em>supra</em>).  As noted above, as to causation, Mr. Kitzes opines:

> An adequate warning informing users to keep their head behind the nose of the board to avoid catastrophic injury affixed to the product would have substantially reduced or eliminated the injury to a 68-year old grandmother.

> <u>See</u> Kitzes Report, Exhibit A, page 8.

Mr. Kitzes admits that he did not reconstruct the accident.  <u>See</u> Kitzes Testimony, Exhibit C, page 48, line 18- page 50, line 20.  He also admits that he could not tell "physically specifically" what would have happened to Ms. Masterson had she followed a warning to ride with her head

---

[9] Most of the materials reviewed by Mr. Kitzes for this case were provided to him by counsel.  <u>See</u> Transmittal Letters, attached hereto as Exhibit K.

behind the nose of the board.  See Kitzes Testimony, Exhibit C, page 85, lines 21-24.  Thus, in essence, he admits that he is not able to give an opinion as to whether the position of Ms. Masterson's head on the board had anything to do with her accident.[10]  He simply cannot tell what would have happened to Ms. Masterson, and therefore cannot testify that the presence of a warning would have substantially reduced the likelihood of, or eliminated, Ms. Masterson's injury.

Accordingly, it is clear, that Mr. Kitzes has employed no methodology, must less a reliable methodology, to reach his causation conclusion.  Accordingly, that opinion must be barred under Daubert.

### 3.   Mr. Kitzes' Opinions Must Be Excluded Because They Are Not Helpful to the Trier of Fact and Therefore do Not "Fit" the Facts of the Case

Finally, Daubert and Rule 702 require that the expert testimony "fit" the facts of the case, "meaning the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."  Calhoun v. Yamaha Motor Corp. USA, 350 F.3d 316, 321 (3d Cir. 2003) (internal citations omitted); See Fed. R.Evid. 702.

Here, Mr. Kitzes testimony regarding whether the board contained an adequate warning is not helpful to the trier of fact.  Indeed, in Williams v. Southern Waterheater USA, Inc., No. 3:95-cv-436, (E.D. Va., Jan. 16, 1996), the Eastern District of Virginia precluded Mr. Kitzes from testifying on a very similar issue.  In that case, Mr. Kitzes was offered as a "human factors engineer" to testify that the defendant's warning on its water heater was not adequate and that an adequate warning would have been a label that was later used on similar heaters.  Id. at 9.  The

---

[10] Plaintiff has proposed that she will prove causation by arguing that if a warning had been on the board, she would not have gone in the water with it.  Aside from the obvious fallacy of this argument arising out of the fact that she is an experienced ocean swimmer and admits she knew that body boarding *could cause death*, (in other words, she went in to the water with a body board knowing she could DIE, but a warning about riding with her head behind the nose of the board would have changed her mind), if Mr. Kitzes is relying on THAT testimony for his causation opinion, it is simply not helpful.  See Fed.R.Evid. 702.

Court noted that Mr. Kitzes had passed no recognized engineering exams, and that his education included a bachelor's degree in history, a law degree, and a 5 ½ day course in human factors. The Court barred Mr. Kitzes' testimony as "unhelpful" to the trier of fact under Rule 702.  In so doing, the Court noted that the adequacy of the warning was to be measured given the common sense of ordinary people and that the warnings and the dangers of the heater could be introduced without Mr. Kitzes' testimony.  The Court noted that Mr. Kitzes essentially sought to testify regarding the "common sense" question of whether the warnings were adequate in light of the dangers presented and that jurors were qualified to judge that common sense question without expert testimony.  Id.  Thus, although the court acknowledged Mr. Kitzes' experience working for the CPSC and evaluating warning labels, it held that the testimony of Mr. Kitzes would only confuse and prejudice the jury, "who should rely on their own common sense abilities [to judge the adequacy of the warning in light of the dangers of the product] and not defer therein to professionals".  Id. at 10.

Here although Mr. Kitzes' testimony should be excluded as it was in Williams, this case is unlike Williams in that expert testimony is required to take the case to the jury.  A layperson is simply not able to make the determination as to whether riding with one's head behind the nose of the board is in fact dangerous (and therefore whether the board requires a warning against that practice).  Certainly, a lay person cannot make a biomechanical causation determination in this case without expert testimony.  Indeed, the Court in Heinle v. Duff Norton Co., after noting that plaintiff's expert had not drafted a specific proposed warning or conducted any tests on that warning, held that his opinions "would not assist the jury in their determination of the facts of this case and further, would amount to little more than rank speculation."  See Heinle Opinion, Exhibit I, page 12.  Here, as discussed above and just as in Heinle, supra, Mr. Kitzes has not

drafted any specific language for a proposed warning or warnings or tested any such warnings. Thus, his testimony would not be helpful to the trier of fact.

Accordingly, Mr. Kitzes' testimony regarding the adequacy of any warning must also be barred because it is not helpful to the trier of fact under <u>Daubert</u> and Rule 702.

**B.      Any Testimony By Mr. Kitzes that the Board Should Have Contained a Warning that Body Boarding Is Hazardous Must Be Barred.**

It is anticipated that plaintiff will attempt to offer Mr. Kitzes to testify that the board should have had some warning to the effect that bodyboarding in the ocean is hazardous.  As discussed extensively in Sunspecs, Inc's Motion for Summary Judgment, the hazards of bodyboarding in the ocean are open and obvious.  See Brief in Support of Sunspecs Motion for Summary Judgment, Doc #53, Part III.B.  When a danger is open and obvious, there is no duty to warn as a matter of law.  <u>Mathews v. University Loft Company</u>, 387 N.J. Super 348, 903 A.2d 1120, (App Div. August 15, 2006); N.J.S.A. 2A:58C-4; <u>see</u> <u>Campos v. Firestone Tire and Rubber Co.</u>, 98 N.J. 198, 206 (1984); <u>Michalko v. Cooke Color & Chem Corp.</u>, 91 N.J. 386, 403 (1982); <u>McWilliams v. Yamaha Motor Corporation</u>, 780, F.Supp. 251, 262 (D.N.J. 1991), <u>rev'd on other grounds</u>, 987 F.2d 200, 204 (3d Cir. 1992).

Indeed, during argument on the motion for summary judgment, the Court ruled that the dangers of body boarding in the ocean were open and obvious, and plaintiff's counsel agreed. <u>See</u> Transcript of Oral Argument, attached hereto as Exhibit L, page 31, Line 3- page 32, line 13. That is the law of the case, and plaintiff has judicially admitted that the dangers of body boarding are open and obvious as relevant to this case.  Thus, plaintiff may not present a claim that the board should have contained a warning regarding the hazards of body boarding in the ocean, and Mr. Kitzes may not offer testimony that the board could have contained those warnings because

it is simply irrelevant, as there is no duty to provide those warnings as a matter of law.

Accordingly, any such testimony by Mr. Kitzes should be excluded.

> C.   **Mr. Kitzes' Testimony Regarding the Federal Hazardous Substances Act Must Be Barred.**

Even if Mr. Kitzes' testimony is not barred in its entirety (as it should be, see above), his testimony regarding the Federal Hazardous Substances Act must be barred.  A court must limit expert testimony so as to not allow experts to opine on "what the law required" or "testify as to the governing law." Casper v. SMG, 389 F.Supp. 2d 618, 621 (D.N.J. 2005), citing U.S. v. Leo, 941 F.2d 181, 196-97 (3d Cir. 1991).  "The rule prohibiting experts from providing their legal opinions or conclusions is 'so well established that it is often deemed a basic premise or assumption of evidence law -- a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." Id., quoting In re Initial Public Offering Sec. Lit., 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001).

Here, Mr. Kitzes offers the opinion that the bodyboard "meets the definition" of a "misbranded hazardous substance" under the Federal Hazardous Substances Act.  See Kitzes Report, Exhibit A, page 10.  This statement follows a discussion of the legal requirements under the Federal Hazardous Substances Act and its regulations.  This discussion is clearly inadmissible; Mr. Kitzes may not testify as to areas of law.  Moreover, *plaintiff* has not even made a claim in the complaint for a violation of that Act.  Indeed, on Sunspecs' Motion for Summary Judgment, the Court ruled that plaintiff did not allege a violation of the Federal Hazardous Substances Act, and, therefore, Sunspecs motion in that regard was moot.  See Transcript of Oral Argument, Exhibit L, page 60, lines 7-16.  Since compliance with the Act is not before the Court, any testimony in that regard is irrelevant.

Even if it were somehow relevant, Mr. Kitzes cannot testify to it, as the law itself requires that the CPSC make the determination as to what is a Misbranded Hazardous Substance.  Under the Federal Hazardous Substances Act, the term hazardous substance means:

(A)  Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

….

(D) Any toy or other article intended for use by children *which the Secretary [Commission] by regulation determines, in accordance with section 3(e) of this Act* [15 USCS § 1262(e)], presents an electrical, mechanical, or thermal hazard

15 U.S.C. § 1261(f)(1)(D).  (Emphasis added).

15 U.S.C § 1262 (e), in turn, provides:

A determination by the Secretary [Commission] that a toy or other article indeed for use by children presents an electrical, mechanical, or thermal hazard shall be made by regulation in accordance with [certain procedural regulations].

15 U.S.C. §1262(e). (emphasis added).

Thus, under the Federal Hazardous Substances Act, a product can be a "hazardous substance" as a mechanical hazard <u>*only*</u> *if the Commission, in accordance with the procedures in the Act, promulgates regulations finding that a particular product is a hazardous substance.* Indeed, the commission has done just that in 16 C.F.R. 1500.18, which lists toys and other articles that it contends present mechanical hazards.  These toys include rattles, dolls, lawn darts, caps, baby-bouncers, "clacker balls", pacifiers, toys which present choking hazards, bicycles, baby cribs, etc.  <u>Id.</u>  There is no mention of boogie or body boards on that list.

In his report, Mr. Kitzes cites 15 U.S.C. § 1261(f)(1)(D) (which is also recited in 16 CFR 1500.3(b)(4)(i)(D)), which states:

Any toy or other article intended for use by children which the commission by regulation determines, in accordance with section 3(e) of the act, presents an electrical, mechanical, or thermal hazard.

See Kitzes Report, Exhibit A, page 8.

He then cites the "mechanical hazard" definition contained in 16 C.F.R. 1500.3(b)(17) and concludes that the boogie board is a hazardous substance (because it is a mechanical hazard) and that it is misbranded because it does not contain a label as required by 16 C.F.R. 1500.3 (b)(14).  See Kitzes Report, Exhibit A, page 9.  He therefore concludes that the boogie board meets the definition of a "misbranded Hazardous Substance."  See Kitzes Report, Exhibit A, page 10.

In rendering this opinion, Mr. Kitzes has totally usurped the function of an entire government body, the CPSC, and has in effect made himself the judge of whether a product is a hazardous substance.  That is not his job.  It is the CPSC's job to make that determination, *by regulation*, and following the procedures outlined in the statute.  It has done so in 16 CFR § 1500.18, but nowhere does a boogie board or anything remotely akin to one appear on that list. If the CPSC does not brand a product as a mechanical hazard, then it is not one; that is, in the absence of a product appearing on the list contained in 16 CFR § 1500.18, it is not a "mechanical hazard".  See 15 U.S.C. § 1261(f)(1)(D).  Since the boogie board is not a "mechanical hazard" it is not a "hazardous substance" under 15 U.S.C. §1261(f), as it does not fit within any of the other definitions of "hazardous substance."  Since it is not a hazardous substance, it cannot be a "misbranded hazardous substance" under 16 CFR 1500.3(b)(14).  Since it is not a "misbranded hazardous substance" is clear that there is no violation of the Federal Hazardous substances Act. See 15 U.S.C.S. 1263(a) (prohibiting introduction of misbranded hazardous substances into interstate commerce).

During this litigation, plaintiff (and Mr. Kitzes) have attempted to circumvent the obvious problem with this testimony (i.e., that it states legal opinions and is irrelevant) by claiming that Mr. Kitzes merely opines that the board "meets the definition" of a misbranded hazardous substance, not that it actually legally is one.  The disingenuousness of this argument is readily apparent: if Mr. Kitzes is not contending that the Act was violated, why make any mention of it?  Certainly, if the jury hear that it "meets the definition" of a misbranded hazardous substance, they will conclude that, in fact, the board somehow violates the Act.  Thus, at the very least, the testimony should be barred under Fed.R.Evid. 403 because its probative value is substantially outweighed by its unfair prejudice.  See Fed.R.Evid. 403.

In sum, Mr. Kitzes simply cannot testify to the Federal Hazardous Substances Act or any alleged violation thereof, or even that the body board "meets the definition" of a Misbranded Hazardous Substance, as this testimony states impermissible legal opinions, is irrelevant, and is unfairly prejudicial.  Accordingly, any testimony regarding that Act must be barred.

**D.      Mr. Kitzes' Testimony Regarding the Way in Which a Company Should Create Warnings Should be Barred as Irrelevant**

Mr. Kitzes report engages in an extended discussion of principles of "product safety management" and also states that Sunspecs "failed to apply the accepted principles of product safety analysis".  See Kitzes Report, Exhibit A, page 6.  However, as shown below, this opinion should be excluded as irrelevant.

In New Jersey, the Products Liability Act governs liability for sale of defective products.  See N.J.S.A. 2A:58C-2 et seq.  In order to prove a strict products liability action in New Jersey, a plaintiff must show (1) the product was not reasonably fit, suitable, or safe for its intended purpose and therefore was defective; (2) the defect existed when the product was distributed by

and under the control of the defendant; and (3) the defect caused injury to a reasonably foreseeable user or to another reasonably expected to come in to contact with it.  Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982); Becker v. Baron Bros., 138 N.J. 145, 151 (1994); see N.J.S.A. 2A:58-C.  The Act specifically provides that it applies to "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. 2A:58C-1b(3).  This has been interpreted to mean that all common law claims arising out of harm caused by a product (except for breach of express warranty) are subsumed by the Act.  See Tirrell v. Navistar, Intern., Inc., 248 N.J. Super. 390, 398 (App. Div. 1991).

Thus, the only question here is whether the product was reasonably fit, suitable or safe for its intended purpose (without a warning) and whether the defect caused Ms. Masterson's accident.  Sunspecs' conduct in developing a "safety policy" or identifying product hazards, etc., is irrelevant to that determination.  That is, what Sunspecs did or did not do to evaluate safety hazards is immaterial; the issue is whether the board needed warnings to be reasonably safe.  What Sunspecs did or did not do to determine *if* a warning was needed is irrelevant.  Thus, any testimony regarding Sunspecs alleged failure to apply principles of "product safety analysis" must be excluded as irrelevant.

**E.    Mr. Kitzes' Testimony Regarding the Benefit to Riding on the Board With One's Head Behind the Nose, To the Extent he Seeks to Relay Information He Allegedly Obtained from Other Manufacturers As to the Purposes of Instructions, and, In Particular, the Instruction To "Ride With Your Head Behind the Nose of the Board" Should be Excluded as Hearsay and Because It is Not Reasonably Relied Upon by Experts in the Field.**

Fed.R.Evid. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular filed in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed.R.Evid. 703.

This rule raises two issues as to Mr. Kitzes opinion that riding with one's head behind the nose of the board is dangerous: (1) whether other manufacturers' warnings are reasonably relied upon by experts in the field to make that determination, and (2) whether, if Mr. Kitzes' is permitted to rely on communications and/or materials from other manufacturers, should the basis for Mr. Kitzes' opinions on that issue be disclosed to the jury.

> 1.  *Other Manufacturers Materials and/or Communications with Those Manufacturers is Not Evidence Reasonably Relied Upon By Experts in the "Product Safety" Field to Reach the Conclusion that Riding With One's Head In Front of the Nose of the Board is Dangerous*

The determination as to whether a particular piece of evidence relied upon by an expert is reasonably relied upon by experts in the field is a question of law for the court.  In Re: Paoli Railyard Litigation, 35 F.3d 717, 748 (3d Cir. 1994).  The determination of reasonableness is similar to that under Daubert and Rule 702; that is, there must be "good grounds" upon which to find the data reliable.  Id.  If the evidence is "so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded."  Id., quoting In re: "Agent Orange" Prod. Liab. Litig., 611 F.Supp. 1223, 1245 (E.D.N.Y 1985).  In making the determination, the trial judge "can of course take into account the particular expert's opinion that experts reasonably rely on that type of data, as well

as the opinions of other experts as to its reliability, but the judge can also take into account other factors he or she deems relevant." Paoli, 35 F.3d. at 748.

Here, as discussed above, Mr. Kitzes' apparently contends that he is in the "product safety management field."  As also discussed above the primary basis for Mr. Kitzes' opinion that it is dangerous to ride with one's head in front of the nose of the board (and therefore that a board should contain a warning against that practice) is hearsay gleaned from materials and information from other manufacturers.  Specifically, in his deposition, Mr. Kitzes testified:

> Q:      Do you have any basis for concluding that its at all beneficial for person to have their head in back of the front of the body board when body boarding other than the fact that other manufacturers have put such a warning in their materials?
>
> A:      Well, I haven't done a reconstruction, again, but it's just my understanding that that's the proper and safe way to ride it.
>
> Q:      And is that understanding obtained from the fact that other manufacturers included that warning in their materials?
>
> A:      Well, and just studying, you know, some of the other material that we've marked here.  It mostly comes from the manufacturers, but that's just my understanding.
>
> See Deposition Testimony, Exhibit C, page 141, lines 6-21.

Thus, Mr. Kitzes' places heavy reliance on other manufacturers' materials for the proposition that it is somehow beneficial to ride with one's head behind the nose of the board and why.[11] This hearsay evidence is simply not reasonably relied upon by experts *to make the determination as to whether it is dangerous to ride with one's head behind the nose of the board and, if so, whether doing so has any relevance to the accident*.[12]  Clearly, it is not reasonable to rely on the fact that other manufacturers warn against it for the proposition that it is in fact dangerous.  For

---

[11] Mr. Kitzes goes on to clarify the "other materials" as an article regarding bodysurfing and bodyboarding injuries. However, as discussed above, that article makes no reference to any danger regarding positioning on the board.
[12] This should be distinguished from any reliance by Kitzes on the other boards with warnings to for the more general proposition that the warning should be on the board.  Before that issue is even reached, there must be evidence that it is actually dangerous, or at least more dangerous, to ride with one's head in front of the nose of the board as opposed to behind it.  Mr. Kitzes simply has no basis upon which to base any opinion on that issue.

example, those warnings certainly do not indicate *why* the warning is given. The purpose of the warning is simply to provide a barrier in the event that one strikes something while riding the board (i.e., so that the board strikes the surface of whatever is hit before one's head).  Thus, the entire warning is irrelevant to this case, as Ms. Masterson testified that she separated from the board before striking her head.  See Deposition Testimony of Mary Louise Masterson, attached hereto as Exhibit M, page 55, lines 18-23. The simple fact that the other warnings and any other materials (including any conversations with other manufacturers) does not indicate *why* it would be beneficial to ride with one's head behind the nose of the board demonstrates that Mr. Kitzes cannot reasonably rely upon it.  Accordingly, Mr. Kitzes' reliance on that information is not permitted under Rule 703 and Mr. Kitzes simply cannot give any opinion that riding with one's head behind the nose of the board is dangerous, and therefore that a warning is required.

> 2. *Any Conversations, Communications, or Materials of Other Manufacturers Should Be Excluded Under Rule 703 Because the Probative Value of that Evidence Does Not Outweigh its Prejudicial Effect*

Even if Mr. Kitzes is permitted to rely on other manufacturers' warnings for the proposition that riding with one's head behind the nose of the board is dangerous, Mr. Kitzes' reliance on the other manufacturers materials, and if, he intends to do so, any conversations with any such manufacturers, should be excluded as hearsay because their probative value of the evidence does not outweigh its prejudicial effect.  See Fed.R.Evid. 703.  As the 2000 amendment to Rule 703 makes clear, the disclosure of this hearsay evidence would be admissible only for the limited purpose of assisting the jury in evaluating Mr. Kitzes' opinions.  See Fed.R.Evid. 703, Notes of Advisory Committee on 2000 amendments; Weinstein's Federal Evidence, §703.05(2).

The hearsay information gained by Mr. Kitzes from other manufacturers should not be disclosed to the jury.  Simply put, the probative value of this "Evidence" is extremely low as the

warnings themselves make no indication as to *why* they are given.  Similarly, Mr. Kitzes has not

pointed to any communications or other materials from other manufacturers that indicate the

reasons for the warning itself, much less any reasons for why it would be dangerous to ride with

one's head behind the nose.  If he testifies to this fact, it will be extremely prejudicial to

Sunspecs, as he simply is testifying as to alleged statements of some other manufacturers without

doing any analysis (or having any expertise) of his own.  That is the very heart of the reason

hearsay testimony is not permitted; i.e., because the declarants are not available for cross

examination and the veracity of their testimony cannot be tested.  Accordingly, if the court does

permit Mr. Kitzes to rely on these communications/materials from other manufacturers, the

contents of the materials themselves should not be disclosed to the jury.[13]

### F.    Sunspecs Motion For Summary Judgment Should Be Granted

Sunspecs, Inc. hereby renews its Motion for Summary Judgment (Doc. #53).  Since, as

shown above, Mr. Kitzes' testimony must be barred its entirety, summary judgment is now

appropriate.  As the Court discussed at oral argument on November 2, 2006, as of that time

defendants had not filed a Daubert motion and ruled upon and therefore the Court could not grant

the motion as to causation testimony.  See Transcript of Oral Argument, Exhibit L, page 56, lines

1-14.  That motion is now before the Court.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate and shall

be rendered, "… if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The

moving party has the initial burden of identifying for the court those portions of the record that it

---

[13] Of course, if the court disagrees and the information is in fact disclosed to the jury, defendant is entitled to
limiting instruction that the hearsay information is not to be used for any substantive purpose.  Fed.R.Evid. 703,
Notes of Advisory Committee on 2000 amendments.

believes demonstrate the absence of dispute as to any material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to defeat a motion for summary judgment, the non-moving party must produce evidence such as that a reasonable juror could find for that party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Without Mr. Kitzes' testimony, there is simply no factual evidence for a jury to conclude that riding with one's head behind the nose of the board is dangerous and therefore that the body board should have had such a warning.  There is also no evidence in the record for the jury to conclude that the lack of such a warning caused Ms. Masterson's accident.  Accordingly, for those reasons and the reasons set forth in Sunspecs Motion for Summary Judgment, the Motion should be granted and plaintiff's complaint dismissed, with prejudice.

## IV.   CONCLUSION

For all the foregoing reasons, Sunspecs, Inc.'s motion to preclude testimony of William Kitzes, J.D. should be granted and Mr. Kitzes should be barred from testifying at trial.  Since Mr. Kitzes is barred from testifying, plaintiff cannot present a genuine issue of material fact as tot eh adequacy of warnings on the board and therefore Sunspecs, Inc's Motion for Summary Judgment should be granted.

HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN

Dated  1/30/07                    BY:      s/ Richard W. Hollstein
                                 Richard W. Hollstein
                                 Aaron G. Moody
                                 Attorneys for Defendant, Sunspecs, Inc.