**EXHIBIT A**

01/23/2006 17:18 FAX 6099263883     PAUL R D'AMATO     ☎002/028

# Consumer Safety Associates

4501 N.W. 25th Way
Boca Raton, Florida 33434

(561) 241-1900

Wm. F. Kitzes, J.D.
Board Certified
Product Safety Manager
———
Safety Analysis
Warnings
Expert Testimony

Product Safety Online
www.productsafety.com
kitzes@productsafety.com

FAX:
(561) 241-1903

January 20, 2006

Paul R. D'Amato, Esquire
D'Amato Wolfe Cocchi
401 New Road, Suite 103
Linwood, New Jersey 08221

Re:  Masterson v. BJ Stores and Sunspecs

Dear Mr. D'Amato,

The following report is preliminary and based on information available to date. The opinions described below are subject to change should additional information become available.

Product safety management is a system that a reasonably prudent manufacturer puts in place <u>before</u> the first product is conceived to ensure that the final product, along with its warnings, packaging and marketing materials, is reasonably safe. It starts with a statement of commitment for product safety from top management and develops a company's procedures to <u>identify hazards</u>, <u>assess the risk</u>, <u>apply adequate safety measures to eliminate hazards</u> from the design, places a <u>guard between users and potential injury</u> and to <u>warn users of all hazards</u> that have not been eliminated or adequately guarded through technically feasible and economically practical safety measures.

To ensure that product safety management programs are in place, a product safety audit as outlined by the National Safety Council can be used to <u>test</u> the validity of the company's program and to identify the <u>objective techniques</u> to be

Washington D.C. Research Services
CPSC • NHTSA • OSHA • FDA

01/23/2006 17:18 FAX 6099263883          PAUL R D'AMATO          ☑003/028

applied. Once established, ensuring that the required elements are incorporated in the plan is generally not prone to error. Although the application of documents and data may be subject to discussion, the actual principles are well established in the literature.

Product safety management theory has been published and reviewed by scholars in the field for over 50 years. As can be shown from the wide dissemination and acceptance by academia, business and legal professionals, their concepts are widely used and accepted throughout the safety community.

Safety management is primarily a tool to protect consumers before they purchase products. When used correctly, these principles are a reasonable model for injury prevention. It is only after an injury that they are applied to determine if the managers failed to apply the accepted principles.

When evaluating a company's product safety management program, it is incumbent upon a reasonably prudent manufacturer to apply the following accepted safety principles to ensure that the products are reasonably safe.

1.    Establish and observe a written safety policy. This policy should emphasize commitment to safety. In writing, it will ensure all employees obtain clear guidance on safety issues. The policy should set forth a method for discussing safety responsibilities and establish an independent review to ensure consumers are protected from unreasonable risks of injury.

2.    Adequately identify and evaluate product hazards. A hazard is the inherent capability of a product to do harm. Manufacturers must review the potential injury-causing energy and evaluate severity and foreseeability.

3.    Perform an adequate design review integrating product hazards, the environment, and foreseeable consumer use. Once hazards are identified, the reasonably prudent manufacturer must consider the conditions of use under which the injury-causing mechanism (hazard) can cause harm to the user.

Analysis of the environment where the product will foreseeably be used, especially in light of product promotion, is critical in discerning how the consumer may

2

foreseeably use the product, even if it is not the use intended by the manufacturer. The manufacturer also must identify who the end user will be and their level of education and experience.

The product must be reasonably safe prior to distribution in commerce. If it is not possible to eliminate the hazard, the reasonably prudent manufacturer must take steps to guard against the hazard, to adequately inform users of the danger inherent in the product, and to motivate them to avoid that danger.

4.   Develop adequate warnings and training to motivate consumers to understand and avoid dangers. This is critical and relatively inexpensive. When consumers have sufficient data to make an informed decision about safety, they are in a better position to protect themselves from injury.

5.   Continuously monitor product safety data to evaluate safety performance both prior to sale and after distribution to consumers. Historical information such as injury data, warranty claims, lawsuits, complaints, standards and regulations must be reviewed to substantially reduce or eliminate injuries. Monitoring procedures include internal testing, focus groups and task analysis.

6.   Corrective action must be taken to remove defective products from the hands of consumers. Product recalls, field modification and warning campaigns can "fix" otherwise unreasonably dangerous products. Under the Consumer Product Safety Act, manufacturers must report defects that could create a substantial product hazard, and recall products that present an unreasonable risk of severe bodily injury.

*     *     *     *     *

A key precept of safety management concerns products with inherent capability to do catastrophic harm. In priority order, the duty of a reasonably prudent manufacturer is to eliminate the hazard, or, if this is not possible while preserving utility, guard against the hazard. At a minimum, the manufacturer must properly inform users of the danger inherent in the product and motivate them to avoid injury.

3

The first concept is the safety engineering hierarchy of priorities:

- Eliminate hazards

- When hazards cannot be eliminated, provide feasible safeguards against them

- Provide warnings and personal protective equipment against remaining hazards

> National Safety Council
> Product Safety Management Guidelines, 1989

\*     \*     \*     \*     \*

In 1931, H. W. Heinrich, Assistant Superintendent for the Engineering and Inspection Division of the Travelers Insurance Company published the primary modern text of Safety Management, *Industrial Accident Prevention, A Scientific Approach.* The results of his in-depth analysis of more than 5000 accidents revealed four fundamental principles of scientific accident prevention:

1. Executive interest and support
2. Cause-analysis
3. Selection and application of remedy
4. Executive enforcement of corrective practice

These concepts, developed by Heinrich for the Joliet Steel Works, have evolved into modern day safety management practices. Scholarly research has further developed the foundation for safety management practices.

The Consumer Product Safety Commission incorporated these principles in its 1975 publication, *Handbook and Standard for Manufacturing Safer Consumer Products.* The Commission addressed executive action, design review, distribution and corrective action.

In 1983, Harold Roland of the University of Southern California Institute of Safety and Systems Management and Brian Moriarty authored *System Safety*

4

01/23/2006 17:18 FAX 6099263883          PAUL R D'AMATO                    ☑006/028

*Engineering and Management*, outlining the need for product safety policy and analysis to prevent injuries. They evaluated hazard identification, severity and a systematic approach to identify defects.

The National Safety Council first published *Product Safety Management Guidelines* in 1989 describing the relationship between marketing, manufacturing, and safety communications as a key to corporate accident prevention. Their analysis includes the hierarchy of safety management and prevention programs to substantially reduce or eliminate injuries.

Throughout the years, major U.S. and international corporations have established corporate safety policies. These include, among many others, Honeywell, John Deere, Sears, General Motors and Volvo.

Over the past 20 years, I have published articles and book chapters outlining the principles of safety management and analysis in many forums, lectured at the National Safety Council on injury prevention and warnings, and have assisted major manufacturers, distributors and retailers on safety management issues and recalls. (See attached curriculum vitae for a complete list.) While many scholars bring their individual perspective to this issue, the seminal principles that create the model for product safety management have been well established and widely accepted in business, government and academic institutions for over 50 years.

*       *       *       *       *

On July 24, 2002, Mary Louise Masterson went bodyboarding for the first time with her grandchildren in shallow, waist deep water off Cape May, New Jersey. Without any warnings or instructions on the subject Sunspecs bodyboard, she placed her head beyond the nose of the board, caught the wave her young grandchildren picked and was quickly somersaulted over the nose, hitting the ocean floor and breaking her neck.

1.      Sunspecs and BJ Stores failed to act as a reasonably prudent importer and retailer to adequately protect children and adults from the catastrophic risks of injury associated with the foreseeable use of the Sunspecs Rainbow bodyboard.

2.      Sunspecs failed to apply the accepted principles of product safety analysis to adequately:

   a)    Establish and observe a written corporate safety policy;
   b)    Identify product hazards and evaluate severity;
   c)    Perform a risk assessment to adequately integrate product hazards, the environment and foreseeable consumer use;
   d)    Monitor the safety performance of their product;
   e)    Take adequate corrective actions to eliminate, guard or warn consumers of the danger and motivate them to avoid injury.

3.      Sunspecs and BJ Stores failed to adequately warn bodyboard users of the potential for catastrophic injury caused by failing to keep the nose of the board out in front of the rider's head.

4.      The Sunspecs Rainbow bodyboard meets the definition of a Misbranded Hazardous Substance under the Federal Hazardous Substances Act and the regulations at 16 CFR 1500. Failure to provide a warning that includes an adequate signal word, identification of hazard and precautionary measures does not meet the definitions set forth by the Act and regulations.

As early as March 1990, <u>Body Boarding</u> magazine recognized the potential for catastrophic injury under foreseeable bodyboard use. According to Captain Bill Richardson of the Huntington Beach, California lifeguard corps, a review of nearly 700 reports of bodysurfing and bodyboarding cervical injury in southern California ocean waters indicated that the majority of injuries occurred in two to four feet of water, and after one p.m. Though young males understandably were in the majority, injuries in shallow water to everyone were specifically highlighted. Morey Bodyboards, the inventor of bodyboarding, had undertaken education programs geared

to teaching new bodyboarders the fundamentals of aquatic safety 10 years before the Masterson's bought the subject boards.

In the deposition of David Dubois Hoy, owner of BJ Stores trading? as Hoy's 5 & 10, Mr. Hoy is shown a collection of material for a WhamO Malibu Boogie Board copyrighted in 2001, a year before the catastrophic injury to Ms. Masterson. The first page contains a section on Safety Warnings, which includes:

> Always ride with your head behind the nose of the board. In case of collision, you will be less likely to suffer a serious head or neck injury.

When asked if he sold bodyboards with such warning between June of 2000 and June of 2002, he said he couldn't be positive?. He further stated that "if they went to the trouble to do it in 2001, that they would do it in 2000."

Mr. Hoy also reviewed the Swimways Pipeline Wave Rider bodyboard and packaging. The board is embossed with a warning which is repeated in the graphics, advising users to "Always keep the nose of the board out in front of the riders head." It is packaged with two additional pages; a customer information survey and a registration card. The survey is dated February of 2000, months before the injury to Ms. Masterson.

Louis Bush, President of Sunspecs, identifies the subject bodyboard as the "Rainbow" model with cloth cover graphics. It was designed by his staff in 1988. Since he had complete control over the cover, he could have easily required the addition of an adequate warning label.

Yet Mr. Bush states that he never thought about Sunspecs product causing injury, and just "presumed" the product was safe.

He further stated that it was the customer who had to decide whether the subject board was for children or adults. It is therefore absolutely critical that the boards contain the warning found on the Swimways Pipeline Wave Rider as they were

7

expected to be used by children and beginners. Any such warning would have the beneficial effect of providing crucial safety information to adult users as well.

In 2004, Sunspecs distributed the following warning on their Wave Board:

> WARNING: Before riding this board be sure you can swim to shore. ALWAYS ride with your head behind the nose of the board. BE ALERT unpredictable surf can lead to fatal accidents. This is not a lifesaving device. Children must not ride without adult supervision. ATTENTION: Please observe all instructions before using this board.

Mr. Bush, however, states in his December 28, 2004 deposition, "I still do not believe it to be a safety issue."

Mr. Bush essentially admits that Sunspecs had no safety policy, that they never even thought about safety. They failed to identify the hazard, though Captain Richardson made it clear in 1990 in a major industry publication. Until 2004, there was no consideration of the potential dangers in the ocean. And clearly, Sunspecs did not consider that the novice user, adult or child, would require instruction to prevent catastrophic injury.

Corrective actions would be relatively easy and inexpensive. An adequate warning informing users to keep their head behind the nose of the board to avoid catastrophic injury affixed to the product would have substantially reduced or eliminated the injury to a 68 year old grandmother. But even after Ms. Masterson's injury, Mr. Bush still does not believe it is a "safety issue."

Under the Federal Hazardous Substances Act and the regulations at 16 CFR 1500.3(b)(4)(i)(D), a Hazardous Substance means

> Any toy or other article intended for use by children which the Commission by regulation determines, in accordance with section 3(e) of the act, presents an electrical, mechanical, or thermal hazard.

01/23/2006 17:19 FAX 6099263883          PAUL R D'AMATO                           ☑010/028

Under 1500.3(b)(17), a Mechanical Hazard means

--an article may be determined to present a mechanical hazard, if, in normal use or when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness:

(ii)    From propulsion of the article (or any part or accessory thereof);

(iii)   From points or other protrusions, surfaces, edges, openings, or closures;

(v)     From lack or insufficiency of controls to reduce or stop motion;

(viii)  Because of instability; or

(ix)    Because of any other aspect of the article's design or manufacture.

A Misbranded Hazardous Substance (1500.3(b)(14) is defined as a hazardous substance (including a toy, or other article intended for use by children) which fails to bear a label which conspicuously states (1500.3(b)(14)(i):

(C)     The signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic;

(D)     The signal word "WARNING" or "CAUTION" on all other hazardous substances;

(E)     An affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard;

(F)    Precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 3 of the act;

(J)    The statement (1) "Keep out of the reach of children" or its practical equivalent, or, (2) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard;

The WhamO / Swimways / Sunspecs (2004) label meets these basic requirements.

| | | | | |
|---|---|---|---|---|
| (D) | – | Signal Word | – | Warning |
| (E) | – | Principal Hazard | – | Head or neck injury |
| (F) | – | Precautionary Measures | – | Always keep the nose of the board out in front of the rider's head |
| (J) | – | Protection of Children | – | All of the above |

The subject Sunspecs bodyboard meets the definition of a Misbranded Hazardous Substance as defined above.

The failure to provide a reasonable warning label instructing the rider to "ride with your head behind the nose of the board" deprived Ms. Masterson of the safety critical information she needed to protect herself from catastrophic injury.

*Wm F. Kitzes*

JANUARY 20, 2006

10

I have reviewed the following materials for this report:

Depositions of    Mary Louise Masterson
                  Richard Masterson
                  Peter Masterson
                  Karen Dienst
                  Sedgewick Dienst
                  Susan Masterson
                  David Dubois Hoy
                  Lewis Bush
                  Nick Frigo
                  James Wadlow

Exhibit Bush-21 Wave Board Warning

Exhibit Bush-22 Sunspecs, Inc. 2005 Catalog

Exhibit BJ-28(A) Swimways Pipeline Waverider

Exhibit BJ-39(B)WhamO Malibu Boogie Board

Body Boarding Magazine, February/March 1990 Issue, Article "Prevention, Recognition and Treatment of Neck and Back Injuries," by Capt. Bill Richardson

Federal Hazardous Substances Act and Regulations at 16 CFR 1500

Wm F. Kitzes has over 30 years of research and experience at the U.S. Consumer Product Safety Commission, the Institute for Safety Analysis and Consumer Safety Associates, where he currently serves as Principal Safety Analyst and Product Safety Manager. Mr. Kitzes is a Board Certified Product Safety Manager and Hazard Control Manager, and holds a Certificate in Safety Management from the American Society of Safety Engineers. He has testified in over 90 trials in 28 states, Canada and Australia.

From 1974 to 1981, Mr. Kitzes worked at the U.S. Consumer Product Safety Commission (CPSC). For 3 years, he served as Legal Advisor to the Director, Office of Product Defect Identification, and was responsible for identifying product defects, implementing recalls and developing voluntary corrective action plans under Section 15 of the Consumer Product Safety Act.

As CPSC Program Manager for Sports, Recreation and Power Equipment (1977-1980), Mr. Kitzes was certified by the U. S. Government's Safety Management / Engineering Series (GS-018/803). He supervised a team of engineers, epidemiologists, human factors specialists, and technical communication staff in the evaluation of injury statistics, engineering data, and product use information to achieve a reduction in consumer products injuries. Injury prevention tools combined mandatory and voluntary standards, on-product warnings, and safety education campaigns; resulting in publication of the Federal Safety Standard for Walk-Behind Power Lawn Mowers 16 CFR 1205 (1979). Mr. Kitzes served as Commission representative to various industry groups and standards development committees, including American National Standards Institute (ANSI), American Society for Testing & Materials (ASTM), the Outdoor Power Equipment Institute and the Sporting Goods Manufacturers Association.

Mr. Kitzes has been retained as a consultant for a number of major manufacturers, including the Toro Company on product safety issues, the Vendo Company for developing warning labels and safety bulletins, the Jensen Corporation for safe operation of industrial equipment, Nobel Chemical Co. for adequacy of warnings and Corning Glass for evaluation of recalls, BernzOmatic, a division of the Newell Group, for development of point-of-purchase recall displays and advertising, Arctic Cat, Inc. for analysis of all-terrain vehicle off-road safety, including instructions, warnings and

foreseeable use, and Visioneer, Inc. in developing a program to upgrade computer scanners. He has developed a program for Global Industries to improve executive chair stability, reviewed warnings on heavy equipment for Daewoo Heavy Industries America, investigated safety issues for Carson Industries, Inc. and assisted CISCO Systems in recall development. Bill has designed a warning label for Whisper Communications, Inc., and assisted Wham-O, Inc. in recall procedures. He has provided risk analysis, recall assistance and consumer warnings and instructions to Restoration Hardware, Inc. and has developed warnings for Plastics Research Corp. concerning use of decorative building materials as protective barriers. He has reviewed advertising and promotional material for ACH Foods and assisted Hilton Hotels on recall issues. Bill is currently advising Swimways Corporation on product safety management and warnings.

Mr. Kitzes has served as an advisor to the National Association of Attorneys General, the State of New York and is Chairman of the Florida Consumers' Council. He is the author of numerous articles in professional journals, including: *Standards, Regulations and Safety Guidelines to Protect Children from Injury*, Children and Injuries, 2001; *Risk Analysis in Product Liability Litigation*, 2000 Wiley Expert Witness Update; *Protecting Our Kids - Everyone Plays a Part*, Forum, Consumer Attorneys of California, December 1997; *Forensic Safety Analysis: Investigation and Evaluation*, 1996 Wiley Expert Witness Update; *The Role of the Safety Analyst in Product Liability Litigation*, Trial Diplomacy Journal, March/April 1995; *Safety Management and the Consumer Product Safety Commission*, Professional Safety, American Society of Safety Engineers, April 1991; and *ATVs -- The Hidden Danger*, Journal of Law, Medicine & Health Care, Spring 1989.

Mr. Kitzes has been an active speaker at the *National Safety Council* and the *International Consumer Product Health and Safety Organization*. He writes a column on product safety for *CCH Consumer Product Safety Guide*.

See attached Curriculum Vitae for additional information. Compensation is $1950 per 8 hour day.

Attached is a list of deposition testimony since January of 2002. I have done my best to assemble a reasonably complete list. Also attached is a list of all trial testimony since 1983.

## Depositions—Wm. F. Kitzes

The list of deposition testimony below includes cases since January of 2002.  I have done my best to assemble a reasonably complete list.  I cannot state with certainty that the list includes every deposition I have given, but I believe it includes the substantial majority.

| | | |
|---|---|---|
| 12/05 | John Merritt<br>Little Rock, AR | Dorr v. Yamaha |
| 11/05 | Mike Kelly<br>Columbia, SC | Stafford v. Daisy |
| 11/05 | Robert Baker<br>Ft. Lauderdale, FL | Roberts v. Bombardier |
| 10/05 | Robert Baker<br>Ft. Lauderdale, FL | Parlato v. Shindaiwa |
| 10/05 | John Gaebe<br>Miami, FL | Landrin v. MGA Entertainment |
| 8/05 | Ed Matonich<br>Hibbing, MN | Sushoreba v. Easy Heat |
| 7/05 | Ralph Chapman<br>Clarksdale, MS | Smith v. Paccar |
| 6/05 | Robert Baker<br>Boca Raton, FL | Dalal v. Ryder |
| 6/05 | Clark Shanahan<br>Owosso, MI | Swix v. Daisy |
| 5/05 | Stewart Greenberg<br>Miami, FL | Martinez v. Commercial Jet |
| 5/05 | Michael Di Croce<br>Indian Mills, NJ | Alcott v. Polaris |
| 4/05 | Ed Dougherty<br>Kansas City, MO | Shaw v. Movie Star / Family Thrift Stores |
| 3/05 | Thomas Duff<br>Des Moines, IA | Jones v. Daisy |
| 2/05 | Michael Stratton<br>New Haven, CT | Ariano v. Home Depot |
| 2/05 | Williams Edwards, III | Bigelow v. New York Lighter |

Corpus Christi, TX

| 12/04 | Norwood Wilner<br>Jacksonville, FL | Brooks v. Brass Eagle |
|-------|---------|---------|
| 11/04 | Keith Belt, Jr.<br>Birmingham, AL | Crowe v. Daisy |
| 10/04 | Ron Kogos<br>Perth Amboy, NJ | Lopez v. Kawasaki |
| 9/04 | Jason Margulies<br>Miami, FL | Storm v. Carnival |
| 9/04 | Christopher Vlachos<br>Pensacola, FL | Ninivaggi v. Materials Transportation Co. |
| 9/04 | Larry Herscher<br>Miami, FL | Ortega v. MK Diamond Product |
| 8/04 | Lance Turner<br>Monticello, KY | Edwards v. Connecticut Valley Arms |
| 6/04 | Michael Shea, Jr.<br>San Jose, CA | Glenn v. Hong Jin Crown |
| 5/04 | James Leritz<br>St. Louis, MO | Lockridge v. Scripto |
| 4/04 | Peter Daughtery<br>Columbus, GA | Milton / Davis v. Honda |
| 4/04 | Mike Moore<br>Paducah, KY | Weixler v. Paris Co. and Saunders Brothers |
| 3/04 | Randell Roberts<br>Tyler, TX | Nemons v. Manchester Tank & Equipment |
| 3/04 | Tim O'Brien<br>Pensacola, FL | Hickman v. HEK |
| 3/04 | Bruce Bachhuber<br>Green Bay, WI | Reichwald v. SC Johnson |
| 2/04 | Tim O'Brien<br>Pensacola, FL | Dockery v. Homier |
| 2/04 | Ralph Chapman<br>Clarksdale, MS | Engels v. Presto |
| 11/03 | Ray Thomas | Eberts v. Kawasaki |

01/23/2006 17:21 FAX 6099263883                    PAUL R D'AMATO                          ☑023/028

Portland, OR

| 10/03 | Ralph Chapman<br>Clarksdale, MS | Groom v. Massey Ferguson / AGCO |
| 8/03 | Justus Reid<br>West Palm Beach, FL | Varney v. Home Depot |
| 7/03 | Brian Cummings<br>Nashville, TN | Martinez v. Daisy |
| 7/03 | Paul Bonadies<br>Chicago, IL | Wachholz v. Levolor |
| 6/03 | Jeffrey Thomas<br>Seattle, WA | Hauser v. Baby Trend |
| 6/03 | Richard Morgan<br>South Bend, IN | Boriboune v. JumpKing |
| 5/03 | Peter Perlman<br>Lexington, KY | Fischesser v. Kawasaki |
| 5/03 | P. Jeffrey Archibald<br>Madison, WI | Farr v. Evenflo |
| 4/03 | Gary Friedman<br>Miami, FL | Angelino v. Integre-Med |
| 4/03 | Mark Bourbeau<br>Boston, MA | Smith v. Robertshaw |
| 4/03 | William Hansen<br>Denver, CO | Bryte v. Sunbeam |
| 4/03 | Joseph Roberts<br>Jackson, MS | Stringer v. Honda |
| 3/03 | Ray Marchan<br>Brownsville, TX | Lee v. E-Ton |
| 3/03 | Bruce Rasmussen<br>Charlottesville, VA | Proctor v. Cosco |
| 3/03 | Tim O'Brien<br>Pensacola, FL | Oatsvall v. HEK |
| 2/03 | Mark Collmer<br>Houston, TX | Bagwell v. General Motors |
| 1/03 | Ralph Chapman | Horton v. Grenada Inn |

Clarksdale, MS

| | | |
|---|---|---|
| 1/03 | Norwood Wilner<br>Jacksonville, FL | Fait v. C & S Trailers |
| 1/03 | Mary Coffey<br>St. Louis, MO | McFadden v. Rapac |
| 12/02 | Daniel Gurwitz<br>McAllen, TX | Carter v. Bic |
| 11/02 | Michael Josephs<br>Miami, FL | Diaz v. Graco |
| 9/02 | David Clayson<br>Las Vegas, NV | Frederick v. Ford |
| 8/02 | Martin Kinney<br>Louisville, KY | Holland v. WalMart |
| 8/02 | Robert Spohrer<br>Jacksonville, FL | McMullin v. US Tobacco |
| 8/02 | William Kolodner<br>Baltimore, MD | Emminizer v. Disney |
| 7/02 | Jeffrey Goldberg<br>Chicago, IL | Rosa v. Scripto |
| 6/02 | Robert Sanders<br>Covington, KY | Larkins v. Sturm Ruger |
| 5/02 | Peter Perlman<br>Lexington, KY | Neal v. Connecticut Valley Arms |
| 5/02 | Tyler Thompson<br>Louisville, KY | Cook v. Sufix |
| 4/02 | Keith Belt<br>Birmingham, AL | Letson v. Daisy |
| 3/02 | Sanford Reinstein<br>Miami, FL | Curras v. Freixenet |
| 3/02 | Joel Faxon<br>Bridgeport, CT | Andrew v. General Motors |
| 2/02 | Robert T. Hill<br>Jackson, MS | Love v. Daisy |
| 2/02 | Lewis Levin | Davis v. State Industries |

## Trial Testimony - Wm F. Kitzes

The following is a complete listing of all the cases in which I have testified at trial since 1983.

1. Antley v. Yamaha, State Court, Louisiana
2. Wilson v. Yamaha, Federal Court, Texas, Judge Hall
3. Banwart v. Toro, State Court, Minnesota
4. Jendro v. Honeywell, State Court, Minnesota
5. Klein v. Murray of Ohio, Federal Court, Maryland
6. Hedrick v. Emerson, State Court, Wisconsin
7. Tafoya v. Sears, Federal Court, Colorado, Judge Finesilver
8. Lind v. Radiator Specialties, State Court, New York
9. Balder v. Honeywell, State Court, Minnesota
10. Nelson v. Gillette, State Court, Oklahoma
11. Gigger v. Toro, State Court, Oklahoma
12. Holmes v. Emerson, State Court, South Dakota
13. Burr v. State Industries, Federal Court, Oklahoma
14. Bailes v. Toro, State Court, Minnesota
15. Kloepfer v. Honda, Federal Court, Utah
16. Gilman v. Honda, Federal Court, El Paso, Texas
17. Silver v. National Presto, Federal Court, Tennessee
18. Dennis v. Honda, USDC, Amarillo, Texas, Judge Robinson
19. Pearson v. Murray of Ohio, USDC, Eastern District, Oregon
20. Kozoway v. Massey-Ferguson, USDC, Denver, Judge Kerrigan
21. Mercer v. Honda, State Court, Tennessee
22. Mullins v. Honda, State Court, Texas, Judge Dibrell
23. Cornette v. Evenflo, State Court, Florida, Judge Lee
24. Artrip v. Honda, Federal Court, Indiana, Judge Lee
25. Anderson v. Vecellio & Grogan, State Court, West Virginia
26. Montoya v. Honda, State Court, California, Judge Park
27. Haberkorn v. American Motors, State Court, Michigan
28. Bittner v. Honda, State Court, Wisconsin
29. Covert v. Honeywell, State Court, Michigan, Judge Cooper
30. Frownfelter v. Toyotomi Kogyo, Federal Court, Indiana

1

31. Rangel v. Honda, State Court, California, Judge Fenton
32. Trout v. Massey-Ferguson, USDC, Arkansas, Judge Roy
33. Britt v. Kawasaki, State Court, Mississippi, Judge Carlson
34. Stiles v. Honda, Supreme Court, Vancouver, British Columbia
35. Stephenson v. Honda, State Court, California, Judge Roeder
36. Drury v. Honda, State Court, Louisiana[
37. Larsen v. Yamaha, State Court, California, Judge Haller
38. Vinci v. General Motors, State Court, Michigan
39. Perrin v. Invacare, Federal Court, Arkansas
40. Volk v. Keller Industries, Inc., State Court, Florida
41. Moore v. Honda, State Court, California, Judge Shaw
42. Serrano v. Keller Industries, Inc., State Court, Florida
43. Fuertado v. Honda, State Court, Texas
44. Ladd v. Honda, State Court, Tennessee, Judge Goodall
45. Horneber v. Textron, Federal Court, Michigan, Judge Cleland
46. Eimers v. Honda, Federal Court, Pennsylvania
47. Morris v. Sears, State Court, Kentucky
48. Campbell v. Murray of Ohio, State Court, Wisconsin
49. York v. American Yard Products, Federal Court, Texas
50. Oldeen v. Honda, Federal Court, Wisconsin
51. Moore-Barnes v. Jacobsen, State Court, Indiana
52. Kehl v. Yamaha, State Court, California
53. Clark v. Kawasaki, State Court, West Virginia
54. Marks v. Toshiba, State Court, Michigan
55. Hicks v. Honda, Federal Court – Middle District, Tennessee
56. Matte v. General Motors, State Court, Louisiana
57. Clews v. Escondido Honda, State Court, California
58. Marcon v. K-Mart, State Court, Minnesota
59. Morales v. Honda, Federal Court, Eastern District, Kentucky
60. Welch v. General Motors, Federal Court, Northern District, Georgia
61. Adkins v. East End Cycle and Suzuki, State Court, West Virginia
62. Walsh v. Fisher Price, State Court, Texas
63. Hill v. Black & Decker, State Court, Indiana, Judge Barr
64. Medina v. Siemens, State Court, Florida
65. Gregory v. City of Bluefield, State Court, West Virginia

2

66. Zamarripa v. Sears, State Court, Texas
67. Johnston v. John Deere, Federal Court, Maine
68. Bustamante v. Haemonetics, State Court, Florida
69. Woods v. Qual-Craft, State Court, Indiana
70. Herman v. Crosman, State Court, Missouri
71. Marksberry v. Sears, State Court, Kentucky
72. Wolcott v. Suzuki, Federal Court, South Dakota
73. Gardner v. DESA International, State Court, Alabama
74. Fabian v. Scripto-Tokai, State Court, Virginia
75. Jones v. High Adventure Air Park, Supreme Court, Melbourne, Australia
76. Woodburn v. Manco, State Court, Idaho
77. Kuster v. JumpKing, State Court, Kentucky
78. Gorski v. Sears and Murray, Inc., State Court, Pennsylvania
79. Colnon v. Midwest Industries, Inc., Federal Court, Iowa
80. Purvis v. Ford Motor Co., State Court, Indiana
81. McLemore v. Honda, State Court, Florida
82. Abrahams v. Mystic Pointe, State Court, Florida
83. Walker v. Ford, State Court, Florida, Judge Maass
84. Folbaum v. Rexall Sundown, State Court, New Jersey
85. Cook v. Sufix, State Court, Kentucky, Judge Ryan
86. Tittle v. Polaris, State Court, Colorado, Judge Kraven
87. Grunow v. Valor Corporation, State Court, Florida, Judge Labarga
88. Carter v. Bic Corporation, State Court, Texas
89. Leibel v. General Motors, State Court, Michigan, Judge Andrews
90. Farr v. Evenflo, State Court, Wisconsin, Judge Nowowski
91. Garvey v. Polaris, State Court, Minnesota
92. Glenn v. Hong Jin Crown, State Court, California, Judge Levinger
93. Ogozaly v. Honda, State Court, Pennsylvania, Judge Fine
94. Roberts v. Bombardier, State Court, Florida, Judge Fine

3